IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Eric L. CRANDALL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Eric L. CRANDALL, Respondent.

Supreme Court

*No. 2006AP2058–D. Decided March 4, 2008.*

2008 WI 14

(Also reported in 745 N.W.2d 679.)

¶ 1. PER CURIAM. We review the report and recommendation of the referee that Attorney Eric L. Crandall be publicly reprimanded for his professional misconduct, that he pay restitution to a client, and that he pay the full costs of this disciplinary proceeding, which were $3,321.81 as of October 5, 2007.

¶ 2. Attorney Crandall initially filed an answer that denied the substantive allegations of the complaint

filed by the Office of Lawyer Regulation (OLR). He later stipulated, however, to the truthfulness of those factual allegations and to having committed each of the six counts of alleged professional misconduct. The stipulation he executed acceded to the OLR's request that the referee, Attorney Stanley F. Hack, recommend the imposition of a public reprimand and the payment of costs. The referee issued a report that essentially tracked the OLR's complaint and the parties' stipulation, except that the referee also recommended that Attorney Crandall make a restitution payment to his former clients.

¶ 3.    Attorney Crandall attempted to file an appeal from the referee's report and recommendation, but the court previously ruled that his appeal was untimely. Thus, the court's review proceeds under SCR 22.17(2).[1] In conducting our review, we uphold a referee's findings of fact unless they are shown to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718; *In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). Having established the proper factual and legal setting, we determine the appropriate level of discipline to be imposed under the circumstances, independent of the

---

[1] SCR 22.17(2) provides:    Review; appeal.

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

referee's recommendation. *See In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 4. Attorney Crandall was admitted to the practice of law in Wisconsin in September 1991. He has been the subject of professional discipline on one prior occasion. In February 2006 his license to practice law in Wisconsin was suspended for three months as discipline reciprocal to that imposed by the Minnesota Supreme Court. *In re Disciplinary Proceedings Against Crandall*, 2006 WI 6, 287 Wis. 2d 102, 708 N.W.2d 690. The conduct leading to that suspension involved neglecting client matters, failing to communicate with clients and to appear at their court proceedings, failing to comply with discovery rules, and failing to cooperate with the investigation conducted by Minnesota's Office of Lawyers Professional Responsibility.

¶ 5. The current disciplinary proceeding grows out of Attorney Crandall's representation of M.J. and C.J., a married couple. According to the factual findings in the referee's report, as stipulated by Attorney Crandall, M.J. and C.J. hired Attorney Crandall to help them remove inaccuracies from their credit report following their filing of a Chapter 7 bankruptcy petition.

¶ 6. When Attorney Crandall reviewed M.J. and C.J.'s credit report, he noted that M.J.'s credit report had been requested on several occasions by Direct Merchants Credit Card Bank (Direct Merchants). M.J., however, did not believe that he had an account with Direct Merchants.

¶ 7. Attorney Crandall told M.J. and C.J. that Direct Merchants' actions constituted a violation of the federal Fair Credit Reporting Act (FCRA). In February and March 2002 he sent two letters to Direct Merchants

requesting any credit application or authorization in which M.J. had authorized Direct Merchants to obtain access to his credit report.

¶ 8. On April 12, 2002, Direct Merchants sent a response to Attorney Crandall. That letter asserted that in response to a telemarketing call in January 2001, M.J. had authorized Direct Merchants to review his credit report. The letter also stated that Direct Merchants had subsequently ordered credit cards for M.J., which he should have received in February or March 2001.

¶ 9. Attorney Crandall then sent two letters to M.J. in which he asked M.J. to respond to the statements in Direct Merchants' response. M.J. did not respond to Attorney Crandall's letters.

¶ 10. Despite not having heard from M.J., Attorney Crandall replied to Direct Merchants' April 12, 2002, letter. Attorney Crandall's letter stated that M.J. had insisted that he had not given Direct Merchants permission to review his credit report, and that M.J. had never received any credit cards from Direct Merchants. Attorney Crandall demanded that Direct Merchants provide copies of all records relating to its alleged telephone call with M.J. If such records were not provided, Attorney Crandall threatened to bring an action against Direct Merchants. Attorney Crandall sent a copy of this letter to M.J.

¶ 11. Although he still had not received any response from M.J., on June 28, 2002, Attorney Crandall proceeded to file an action against Direct Merchants in the United States District Court for the Western District of Wisconsin. The complaint alleged that Direct Merchants had violated the FCRA by accessing M.J.'s credit report on three occasions without having a lawful basis to do so.

¶ 12. On August 8, 2002, Attorney Crandall sent a settlement letter to Direct Merchants. Attorney Crandall asserted that Direct Merchants faced possible financial exposure of $389,000, which included $200,000 for potential punitive damages and $150,000 for attorney fees. Attorney Crandall offered to settle the matter with Direct Merchants for a payment of $150,000. Attorney Crandall sent a copy of this letter to M.J.

¶ 13. On August 13, 2002, counsel for Direct Merchants sent a letter to Attorney Crandall. That letter indicated that Direct Merchants had a tape recording of the January 2001 telemarketing call in which M.J. had applied for a credit card and had authorized Direct Merchants to review his credit report. The letter also stated that Direct Merchants had subsequently approved M.J.'s credit application and had ordered credit cards to be sent to him. Enclosed with the letter was a copy of a March 2002 statement relating to M.J.'s account with Direct Merchants. The letter further advised that if M.J. no longer wished to allow Direct Merchants to review his credit report, he could submit a written request to cancel his account. Finally, the letter requested that M.J. voluntarily dismiss his federal court complaint.

¶ 14. The next day Direct Merchants provided a tape recording of the telemarketing call. Direct Merchants informed Attorney Crandall that the recording showed that his client had no valid basis for continuing the lawsuit. It stated that if M.J. proceeded further with the action, it would "avail itself of all legal options."

¶ 15. Attorney Crandall sent a copy of the letter and the tape recording to M.J. and C.J. They have subsequently stated that they believed that the lawsuit would be terminated at that point. Attorney Crandall, however, continued prosecuting the federal claim. On

August 26, 2002, Attorney Crandall wrote to Direct Merchants' counsel. He acknowledged that it was M.J.'s voice on the recording of the telemarketing call, but denied that M.J. had ever received a credit card or a March 2002 account statement from Direct Merchants. Attorney Crandall alleged that the telemarketing call had authorized Direct Merchants to review M.J.'s credit report on only one occasion. Thus, he claimed that Direct Merchants' access of M.J.'s credit report on subsequent occasions had still constituted a FCRA violation.

¶ 16.   Because Attorney Crandall refused to dismiss the action, Direct Merchants filed a motion for summary judgment and for sanctions against M.J. On December 12, 2002, M.J. signed an affidavit in opposition to the summary judgment motion. In the affidavit, M.J. averred that he had initially told Attorney Crandall that he had not had direct contact with Direct Merchants and that he had believed that statement to be true at the time. He now admitted that he had in fact applied for a Direct Merchants' credit card during a January 2001 telemarketing call and acknowledged that Direct Merchants had lawfully accessed his credit report on one occasion in response to his application. The affidavit stated, however, that M.J. had never received any credit card from Direct Merchants, that Direct Merchants' access of his credit report on subsequent occasions had therefore been unlawful, and that on the day prior to executing the affidavit M.J. had tried to make two purchases with his Direct Merchants credit card number, but had been unsuccessful because the card number had been rejected.

¶ 17.   Although M.J.'s affidavit had been designed to oppose Direct Merchants' summary judgment motion, Attorney Crandall did not file it with the court.

542

Indeed, he filed nothing in opposition to the summary judgment motion. The U.S. District Court scheduled the motion for a hearing, but Attorney Crandall failed to inform either M.J. or C.J. of that proceeding.

¶ 18. Since no opposition to the motion had been filed, on December 31, 2002, the court granted summary judgment to Direct Merchants and dismissed M.J.'s claims. The court, however, denied Direct Merchants' request for sanctions against M.J. Attorney Crandall failed to inform M.J. and C.J. of the dismissal of M.J.'s complaint.

¶ 19. On January 8, 2003, Direct Merchants filed a motion for reconsideration of the denial of their motion for sanctions. Although he had filed nothing in opposition to the summary judgment motion, Attorney Crandall now filed a brief in opposition to the renewed request for sanctions and attached the summary judgment affidavit that M.J. had previously executed on December 12, 2002. The court scheduled a hearing on the reconsideration motion, but Attorney Crandall again failed to inform M.J. and C.J. of that fact.

¶ 20. On March 19, 2003, the U.S. District Court granted Direct Merchants' motion for reconsideration of the sanction request and entered a judgment against M.J. personally in the amount of $4,747.77. Attorney Crandall failed to inform M.J. and C.J. of the judgment. They first learned of the judgment against M.J. when they received a letter from counsel for Direct Merchants on July 18, 2003.

¶ 21. Attorney Crandall subsequently forwarded correspondence to M.J. and C.J. informing them of the judgment and asking them to contact his office. After several days of unsuccessful attempts, M.J. and C.J. were finally able to speak with Attorney Crandall, but did not receive a satisfactory explanation of what had

transpired in the federal lawsuit. During this conversation, Attorney Crandall stated that he concluded from the tone of M.J. and C.J.'s voices that they were firing him.

¶ 22. M.J. and C.J. reached an agreement with Direct Merchants whereby on November 13, 2003, they paid $1,600 to Direct Merchants. In exchange for this discounted payment, Direct Merchants filed a satisfaction of the sanctions judgment against M.J.

¶ 23. On three occasions beginning in January 2004, M.J. and C.J. requested Attorney Crandall to return their file. Attorney Crandall failed to comply with their requests in a timely manner. He did not return M.J. and C.J.'s file to them until August 16, 2004.

¶ 24. In November 2003 M.J. and C.J. filed a grievance with the OLR. They alleged that Attorney Crandall had continued to prosecute the action against Direct Merchants despite having received evidence that undermined any claim, that he had failed to return their calls or otherwise keep them informed, and that he had failed to return their file when asked to do so.

¶ 25. In February and March 2004 the OLR sent letters to Attorney Crandall attaching M.J. and C.J.'s grievance and asking him to submit a written response. Attorney Crandall did not respond within the time periods requested by the OLR. On March 30, 2004, Attorney Crandall did fax a letter to the OLR. In his letter Attorney Crandall stated that his current workload prevented his timely response to the grievance and that he would submit a written response by April 5, 2004. He did not, however, respond as promised. The OLR then delivered yet another letter to Attorney Crandall, this time by personal service, but he still did not respond to the substance of the grievance.

¶ 26. Ultimately, the OLR sought and this court granted a temporary suspension of Attorney Crandall's license to practice law in Wisconsin due to his failure to cooperate with the OLR's investigation. Almost a month after his license was temporarily suspended, Attorney Crandall finally submitted a response to the grievance. On the OLR's motion, this court reinstated Attorney Crandall's license.

¶ 27. The OLR asked Attorney Crandall on two additional occasions for further information. On November 29, 2005, Attorney Crandall responded to the OLR, stating that he had already provided detailed and comprehensive documents and thought any additional response was unnecessary. Attorney Crandall also asked for documents that had been identified as having been attached to the OLR's letters, but that he alleged had been missing. Although the OLR sent the appended documents to Attorney Crandall, he did not provide any further response.

¶ 28. On the basis of these facts, the referee concluded that by continuing to insist that M.J. had no credit relationship with Direct Merchants and to pursue a claim against it despite receiving evidence that M.J. had a credit relationship with Direct Merchants and had authorized Direct Merchants to access his credit report, Attorney Crandall had knowingly advanced a claim or defense that was unwarranted under existing law and had knowingly advanced a factual position without a basis for doing so, in violation of former SCR 20:3.1(a)(1) and (2).[2] The referee also determined that Attorney Crandall's failure to file M.J.'s

_____

[2] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S.Ct. Order No. 04–07, 2007 WI 4, 293 Wis. 2d xv; and S.Ct. Order No. 06–04, 2007 WI 48, 297

December 12, 2002, affidavit or a brief in opposition to Direct Merchants' summary judgment motion had constituted a violation of SCR 20:1.3.[3] The referee further concluded that Attorney Crandall had violated SCR 20:1.4(a)[4] by failing to keep his clients reasonably informed about their matter, as evidenced by the approximately four-month delay between the entry of the judgment against M.J. and Attorney Crandall's notification to M.J. and C.J. of that fact. The referee also found that Attorney Crandall's failure to return M.J. and C.J.'s file in a timely manner had constituted a failure to protect the interests of a client upon termination of a representation, in violation of SCR 20:1.16(d).[5] Finally, the referee concluded that during

---

Wis. 2d xlvii. Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:3.1(a)(1) and (2) provides:

(a) In representing a client, a lawyer shall not:

(1) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law;

(2) knowingly advance a factual position unless there is a basis for doing so that is not frivolous; . . . .

[3] Former SCR 20:1.3 states, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Former SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] Former SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to

two separate periods of time, before and after the temporary suspension of his license to practice law, Attorney Crandall had willfully failed to provide a written response to a grievance and to cooperate with the OLR's grievance investigation, in violation of SCRs 21.15(4)[6] and 22.03(2) and (6),[7] all of which are actionable through SCR 20:8.4(f).[8]

which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] SCR 21.15(4) provides as follows:

Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

[7] SCRs 22.03(2) and (6) state: Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[8] Former SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

¶ 29.  Given the parties' stipulation to the facts described above and to the existence of violations of the Supreme Court Rules of Professional Conduct, we adopt the factual findings contained in the referee's report. We also adopt the referee's legal conclusions that Attorney Crandall committed six separate violations.

¶ 30.  With respect to discipline, the referee recommended that Attorney Crandall be publicly reprimanded and that he be required to pay the costs of the disciplinary proceeding. This recommendation was consistent with the terms of the stipulation entered into by the OLR and Attorney Crandall.

¶ 31.  Having reviewed the record, we agree that the seriousness of Attorney Crandall's professional misconduct requires a public reprimand. His lack of communication with his clients, lack of diligence, failure to return a client's file in a timely manner and failure to cooperate with the OLR's investigation are serious breaches of his ethical duties as a lawyer in this state. In addition to the discipline imposed, we also agree that Attorney Crandall should be required to pay the full costs of this disciplinary proceeding.

¶ 32.  Although the OLR did not request a restitution award in its complaint and the subject was not mentioned in the parties' stipulation, the issue was apparently raised in a telephone conference that the referee had with the parties following the filing of the stipulation. Ultimately, Attorney Crandall submitted a short response arguing against the imposition of any restitution award in favor of M.J. and C.J. In addition to questioning the legal basis for a restitution award where there had been no such request affirmatively

made by the OLR, Attorney Crandall asserted that M.J. had misled him by stating that he had never applied for credit from Direct Merchants, when in fact he had applied during a telephone marketing call. Attorney Crandall argued that once he learned the truth about M.J.'s credit application, he focused not on the original credit review by Direct Merchants, but on Direct Merchants' subsequent reviews of M.J.'s credit report. Attorney Crandall asserted that those subsequent reviews were unlawful under the FCRA because M.J. had never received or activated any Direct Merchants credit card, and therefore, there had been no credit relationship to authorize Direct Merchants' ongoing credit reviews.

¶ 33. Attached to Attorney Crandall's response was an unsigned copy of M.J.'s affidavit in the federal action. The affidavit, to which the OLR did not object, acknowledged that M.J. had initially told Attorney Crandall that he had never had any contact with Direct Merchants. The affidavit stated that M.J.'s memory had been jarred by the recording of his call with a Direct Merchants' representative and that, given his request for a credit card during that telemarketing call, Direct Merchants' initial review of his credit report had been lawful. The affidavit disputed, however, Direct Merchants' claim that a welcome packet and credit card had been sent to M.J. It also stated that although M.J. had received a March 2002 "statement," that document was merely intended to give notice of a class action settlement involving Direct Merchants. The affidavit continued that M.J. had never activated any Direct Merchants' credit card. As proof of that fact, the affidavit stated that M.J. had attempted to use the credit card number over the telephone to order items from two

catalog clothing companies, but the card number had been rejected by both companies.

¶ 34. The record does not show any response by the OLR to Attorney Crandall's filing. Nonetheless, in his report the referee specifically recommended that Attorney Crandall pay restitution to M.J. and C.J. for the $1,600 payment that they had made to Direct Merchants as satisfaction of the sanctions judgment and for any legal fees that they had incurred to negotiate the settlement, plus interest until the restitution was paid in full. The referee's reasoning for the restitution recommendation was that by the time the sanctions judgment was entered, M.J. and C.J. had no longer authorized Attorney Crandall to proceed with the action in light of the fact that Direct Merchants had proven that M.J. had in fact applied for a credit card during a telemarketing call. Thus, the referee concluded that Attorney Crandall had continued to prosecute the action although M.J. and C.J. "thought it had been resolved." The referee also relied on what he believed was a contradiction in the affidavit signed by M.J., and therefore in Attorney Crandall's theory of the case. The referee pointed out that M.J.'s affidavit stated in one paragraph that he had never received a credit card from Direct Merchants, but in a later paragraph stated that M.J. had unsuccessfully attempted to use his Direct Merchants credit card to make two purchases. The referee implied that Attorney Crandall had to know that one or the other of these statements could not be true, and therefore, that his continued prosecution of the action against Direct Merchants had been frivolous.

¶ 35. Although we agree that Attorney Crandall bears some responsibility for not keeping M.J. and C.J. fully informed and for the sanctions judgment that was

550

entered against M.J., we do not believe that he alone should bear full responsibility for the outcome of that case. It is undisputed that Attorney Crandall's initial position in negotiating with Direct Merchants and then in his federal court complaint was based on an inaccurate statement[9] from M.J. that he had never applied for a Direct Merchants credit card. There is no indication in the record that either M.J. or C.J. disagreed with the filing of that complaint.

¶ 36. It is a fact that Direct Merchants subsequently provided proof that M.J. had applied for a credit card during a January 2001 telemarketing call. Attorney Crandall forwarded Direct Merchants' letter on this subject and a tape recording of the call to M.J. According to the OLR's complaint, to which Attorney Crandall stipulated, M.J. and C.J. then "believed the lawsuit would be ended." This factual finding, however, does not mean that M.J. or C.J. directed Attorney Crandall to dismiss the lawsuit. Indeed, there is no allegation or factual finding to that effect. It also does not mean that M.J. and C.J. believed at that time, or at a later time, that the lawsuit had in fact been voluntarily dismissed. Indeed, it is clear that M.J. knew at a later date that the lawsuit had not been dismissed. He subsequently signed an affidavit in which he acknowledged applying

---

[9] M.J.'s affidavit implicitly stated that he had forgotten about the telemarketing call with the Direct Merchants' representative until he saw the transcript of the call. We do not express an opinion on whether this was the case. Even if the telemarketing call had been forgotten, M.J.'s statements that no call had been received were still inaccurate. It was those statements by M.J. to Attorney Crandall that prompted the filing of the federal complaint. Also, there is no indication in the record that either M.J. or C.J. objected to the filing of the complaint on the basis of those statements.

for a credit card initially, but explicitly denied ever receiving one or making another telephone call to Direct Merchants to activate it.

¶ 37. One might argue that M.J. could simply have signed a document that his lawyer gave to him without understanding its contents or importance. The affidavit, however, clearly showed on the top of the first page that it was intended to be part of the federal lawsuit. In addition, the first paragraph of the affidavit stated that the affidavit was being submitted in opposition to Direct Merchants' motions for summary judgment and for sanctions. M.J. signed this affidavit well after he had received the letter and tape recording from Direct Merchants. The fact that he signed such a document, even assuming an imperfect understanding of the document's relevance, shows that M.J. knew his lawsuit remained active to some degree. His signature on the affidavit simply cannot be squared with the referee's implication that Attorney Crandall was continuing to pursue the federal case solely on his own.

¶ 38. In addition, it is not clear that there is an internal contradiction in the position taken by Attorney Crandall or in the affidavit signed by M.J. after Direct Merchants had proven that M.J. had initially applied for a credit card. Attorney Crandall's position after learning of the tape recording of the telemarketing call was that while M.J.'s initial application may have authorized Direct Merchants' first review of M.J.'s credit report, Direct Merchants had no authority to make continuing reviews of M.J.'s credit reports because M.J. never activated, or even received, a Direct Merchants credit card. M.J.'s affidavit does not necessarily undercut this position. Contrary to the conclusion drawn by the referee, the affidavit does not state that M.J. used a physical credit card to attempt to make

purchases in December 2002. Rather, the affidavit states that M.J. used the Direct Merchants credit card *number,* which the catalog companies rejected. Moreover, M.J. never had to present a physical credit card because he attempted these purchases over the telephone. In addition, it is entirely possible that M.J. obtained the credit card *number* allegedly assigned to him by Direct Merchants from the March 2002 statement that Direct Merchants allegedly sent to him or from materials that were filed or produced during the federal litigation. In any event, it is not necessarily true that M.J.'s affidavit and Attorney Crandall's theory of the case were based on a logical contradiction that Attorney Crandall should have recognized, causing him to withdraw the federal complaint.

¶ 39. The bottom line is that we concur with the referee that Attorney Crandall bears some responsibility for the sanction judgment entered against M.J., but we do not believe that the responsibility lies solely with him. He did not keep his clients adequately informed and did not engage them sufficiently in decisions about whether and how to proceed with their claim. On the other hand, there is no allegation in the record that M.J. or C.J. instructed Attorney Crandall to dismiss the lawsuit, and indeed M.J. indicated his approval of continuing the fight by executing an affidavit in opposition to Direct Merchants' summary judgment motion. Under these circumstances, we conclude that it would be equitable for Attorney Crandall to pay partial restitution to M.J. and C.J. in the flat amount of $1,000. This will avoid any further litigation over possible attorney fees or interest, which would be more costly than any amounts at issue.

¶ 40. IT IS ORDERED that Eric L. Crandall is publicly reprimanded for his professional misconduct.

¶ 41.  IT IS FURTHER ORDERED that within 60 days of the date of this order, Eric L. Crandall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Eric L. Crandall to practice law in Wisconsin shall be suspended until further order of the court.

¶ 42.  IT IS FURTHER ORDERED that within 60 days of the date of this order, Eric L. Crandall shall pay restitution to clients M.J. and C.J. in the amount of $1,000. If restitution to M.J. and C.J. is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amount within that time, the license of Eric L. Crandall to practice law in Wisconsin shall be suspended until further order of this court.

¶ 43.  IT IS FURTHER ORDERED that restitution to clients M.J. and C.J. is to be completed prior to paying costs to the Office of Lawyer Regulation.