IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Marshall ARRIEH, Attorney at Law.

Supreme Court

*No. 92-0397-D. Submitted on briefs February 3,
1993.—Decided March 19, 1993.*

(Also reported in 496 N.W.2d 601.)

For Marshall Arrieh there was a brief by *Marshall Arrieh*, Wauwatosa.

For the Board of Attorneys Professional Responsibility there was a brief by *Jeananne L. Danner*, Milwaukee.

PER CURIAM. *Attorney disciplinary proceeding; license suspension imposed.*

This is an appeal by Attorney Marshall Arrieh from the report of the referee concluding that he engaged in professional misconduct and recommending that the court suspend his license to practice law for six months as discipline for it. Attorney Arrieh's misconduct consisted of the following: failure to promptly notify a client of funds he received on the client's behalf, failure to maintain complete records of all funds and other property of the client coming into his possession and render appropriate accounts regarding them, failure to advise the client of deficits occurring in his management of the client's property, failure to provide the client an accounting of the disposition of funds he had received on the client's behalf. In addition, Attorney Arrieh attempted to have his client withdraw a grievance the client filed with the Board of Attorneys Professional Responsibility (Board) concerning Attorney Arrieh's conduct and knowingly made false statements to the Board concerning his client's intent to withdraw the grievance.

Attorney Arrieh's failure to properly account for his receipt and management of client funds and property over an extended period of time and his attempt to induce the client to withdraw a grievance filed with the Board in respect to that conduct constitute serious violations of the court's rules governing the professional conduct of persons licensed to practice law in the state. Further, his attempt to mislead the Board in respect to his client's grievance demonstrates that Attorney Arrieh is willing to violate his fundamental professional duty of honesty to clients and the courts he serves. The six-month license suspension recommended by the referee is an appropriate response to his professional misconduct.

Attorney Arrieh was admitted to practice law in Wisconsin in 1946 and practices in Milwaukee. The court suspended his license to practice law for one year, effective January 1, 1990, as discipline for professional misconduct, including his conversion of client funds to his own use, failure to keep complete records of that client's funds coming into his possession, failure to produce trust account records and other documents subpoenaed in a civil action against him concerning that client's matter, giving false and misleading statements in the course of a deposition concerning his records of those dealings, making false and misleading statements in an affidavit and in testimony in the action concerning his handling of the client's funds and similar false and misleading statements to the district professional responsibility committee investigating his misconduct and failure to produce trust account records upon request of the Board. *Disciplinary Proceedings Against Arrieh*, 152 Wis. 2d 147, 448 N.W.2d 4 (1989). At the conclusion of that suspension, Attorney Arrieh sought reinstatement of his license to practice law. By order of January 7, 1992, the court denied his petition for license reinstatement on the grounds that during the period of suspension he continued to practice law, continued to display signs and use stationery and telephone directory listings identifying him as an attorney, failed to timely notify the court in two pending matters that his license had been suspended and failed to inform a former client of his suspension when she asked him to represent her in a legal matter.

In this proceeding, the referee, Attorney Rudolph P. Regez, made the following findings of fact based on a stipulation of the parties and evidence presented at a disciplinary hearing. In 1985, a man retained Attorney Arrieh to handle an insurance claim arising out of the

theft of his automobile. Soon thereafter, the client and his wife moved to Puerto Rico but maintained contact with Attorney Arrieh, who was handling other legal matters for them. On February 2, 1986, the insurance company sent Attorney Arrieh a check payable to him and the client in the amount of $1,556.60, which Attorney Arrieh cashed. In October, 1989, after returning to Wisconsin, the client filed a grievance with the Board complaining that Attorney Arrieh had never reported the amount of money he had collected on the insurance claim or paid him the funds received.

In response to the client's grievance, Attorney Arrieh told the Board that he had settled the claim for $1,700 and, after deducting a chattel mortgage balance due, his expenses and attorney fees and a partial distribution to the client, he applied the balance of the settlement to upkeep on the client's property in Milwaukee he was managing during his client's absence. In 1989, Attorney Arrieh prepared and gave the client three separate accountings for his management of that property for calendar 1986 but included the credit for the insurance settlement only in the last of those accountings.

Between 1985 and 1988, while he was retained to manage the client's property, Attorney Arrieh did not provide his client with a written financial accounting of receipts and disbursements in connection with the property, despite his client's numerous requests for accountings and a demand for funds the client believed were due him. Attorney Arrieh ultimately provided written financial accountings for the years 1985 to 1988, albeit incomplete and in summary form, after the client filed a grievance with the Board. Attorney Arrieh did not maintain a ledger to record receipts or disbursements in connection with the property; during the Board's investigation, he turned over a stack of receipts as the only documenta-

tion of repairs made on the property, many of those for disbursements he had made in cash. Moreover, Attorney Arrieh did not use his trust account for all of the deposits and disbursements of his client's funds relating to the property he was managing nor did he keep contemporaneous records of the funds he received or disbursed while managing it.

When his client returned to Milwaukee, Attorney Arrieh told him that the operating deficit for the property he was managing had reached $24,000 and the client owed him that amount. Prior to 1989, Attorney Arrieh had given the client no written notice or accounting of the alleged deficit. Testifying before the district professional responsibility committee in August, 1991, Attorney Arrieh stated that he paid approximately $17,000 for building repairs with his own funds and showed those payments in the accountings he gave his client in 1989. Attorney Arrieh claimed he paid cash for a majority of the amounts spent for materials and labor for those repairs.

In a matter that preceded his managing the client's property, the client retained Attorney Arrieh to handle the sale of another property in Milwaukee in 1984. Attorney Arrieh acted in the matter both as real estate broker under his broker's license and attorney, charging an attorney fee as well as a broker commission for handling the sale and setting forth those two fees on the closing statement he prepared. Between 1984 and 1989, the client made a number of requests that Attorney Arrieh give him an accounting of the proceeds from the sale of the property but, as of 1989, had received neither a closing statement nor any other written statement setting forth charges against the amount due the client from the sale.

After the client filed a grievance with the Board in October, 1989, Attorney Arrieh visited his client's home in early January, 1990, purportedly to review bills for repair of the property he had paid. During the discussion, Attorney Arrieh proposed that the client withdraw the grievance he had filed with the Board, in return for which Attorney Arrieh would agree not to pursue his claim against his client, which he then stated was between $6,000 and $8,000. When the client tentatively agreed, Attorney Arrieh typed a mutual release on the client's typewriter at his home, stating that each released the other from any demands or claims existing prior to the date of the release. Attorney Arrieh signed the release but the client did not.

At the same time, Attorney Arrieh also gave the client a letter he had previously prepared and brought with him, addressed to the Board for his client's signature, stating that the client was satisfied with the good work Attorney Arrieh had done for him and that he did not wish to proceed with the grievance. The client did not agree to sign either the release or the letter but said he wanted to consult with Board staff. At the client's request, Attorney Arrieh left the documents with the client, who then informed the Board of Attorney Arrieh's actions and gave it the unsigned release and letter.

A few days after visiting the client, Attorney Arrieh wrote the Board that the client no longer wished to proceed with the grievance. At the time he sent that letter, Attorney Arrieh had had no further contact with his client and did not know whether the client had signed the documents he had left with him. Attorney Arrieh also sent the Board a letter dated March 8, 1991 stating that the client had agreed on January 5, 1990 to ask the Board to withdraw his grievance.

Based on those facts, the referee concluded, as the Board had alleged, that by not providing his client notice until 1989 of his receipt in 1986 of the $1,556 settlement on the insurance claim from the auto theft and not advising his client of the disposition of those funds, Attorney Arrieh failed to promptly notify a client of funds received on the client's behalf, in violation of former SCR 20.50(2)(a).[1] Further, his failure to maintain complete records of all funds and other property coming into his possession that belonged to his client and his failure to render appropriate accounts regarding those funds and property constituted a violation of former SCR 20.50(2)(c);[2] his failure to advise the client of the deficits occurring in the management of the client's property from 1985 through 1988 and his failure to provide the client with an accounting of the disposition of the funds from the 1984 sale of the client's property until 1989 constituted a failure to adequately communicate with his client, in violation of former SCR 20.32(3).[3]

---

[1] Former SCR 20.50 provided:

**Preserving identity of funds and property of a client.**

. . .

(2) A lawyer shall:
(a) Promptly notify a client of the receipt of the client's funds, securities or other properties.

The corresponding current rule is SCR 20:1.15(b).

[2] Former SCR 20.50 provided:

**Preserving identity of funds and property of a client.**

. . .

(2) A lawyer shall:

. . .

(c) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

The corresponding current rule is SCR 20:1.15(b).

[3] Former SCR 20.32 provided:

The referee also concluded, as the Board had alleged, that Attorney Arrieh's attempt to have his client withdraw the grievance he had filed with the Board constituted interference with the Board's investigation, in violation of SCR 21.03(4)[4] and 22.07(2).[5]

In addition to those violations of the ethical rules the Board had alleged, the referee also concluded that Attorney Arrieh knowingly made a false statement to the Board in connection with the disciplinary matter when he wrote on two occasions that the client was withdrawing his grievance and was satisfied with Attorney Arrieh's conduct in his representation, thereby violating SCR 20:8.1(a) and (b).[6]

---

**Failing to act competently. A lawyer may not:**

. . .

(3) Neglect a legal matter entrusted to the lawyer.

The corresponding current rule is SCR 20:1.3.

[4] SCR 21.03 provides:

**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[5] SCR 22.07 provides:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

[6] SCR 20:8.1 provides:

As discipline for his misconduct, the referee recommended that the court suspend Attorney Arrieh's license to practice law for six months. In making that recommendation, the referee considered that Attorney Arrieh's attempts to have his client withdraw the grievance he had filed with the Board and his misrepresentations to the Board regarding his client's desire to withdraw the grievance "portray a pattern of deceit" and characterized his attempt to mislead the Board as "grievous misconduct."

In this appeal, Attorney Arrieh argued that the evidence fails to establish that he purposely interfered with the Board in its handling of his client's grievance. He claimed his conduct toward his client and the Board in respect to the grievance was nothing more than an attempt to settle and compromise mutual claims between him and his client. That argument is meritless. Likewise without merit is his contention that a two-month license suspension would adequately discipline him for his misconduct.

We adopt the referee's findings of fact and conclusions of law in respect to Attorney Arrieh's misconduct considered in this proceeding. We also adopt the referee's recommendation for discipline of that misconduct. Because Attorney Arrieh's license to practice law remains suspended as a result of a prior disciplinary

**Bar admission and disciplinary matters**

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

■■■■■■■■■■

proceeding, the license suspension imposed as discipline in this proceeding shall commence the date of this order.

IT IS ORDERED that the license of Marshall Arrieh to practice law in Wisconsin is suspended for a period of six months, commencing the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Marshall Arrieh pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Marshall Arrieh to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Marshall Arrieh comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

STEINMETZ, J., took no part.