In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Eric L. CRANDALL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant-Respondent,

v.

Eric L. CRANDALL, Respondent-Appellant.

Supreme Court

*No. 2008AP570–D.—Decided April 26, 2011.*

2011 WI 21

(Also reported in 798 N.W.2d 183.)

¶ 1. PER CURIAM. Attorney Eric L. Crandall filed an appeal from the referee's report and recommendation that his license to practice law in Wisconsin be suspended for a period of five months and that he be required to pay the full costs of this disciplinary proceeding.

¶ 2. This is the second opinion regarding this disciplinary proceeding. The complaint filed by the Office of Lawyer Regulation (OLR) contained both reciprocal discipline counts (Counts 8 and 9) and "standard" counts that related to alleged misconduct that was not the subject of discipline in another jurisdiction (Counts 1 through 7).

¶ 3. Because of the difference in the procedures applicable to those two types of counts, we initially severed the reciprocal discipline counts from the "standard" counts. We immediately addressed the reciprocal discipline counts and suspended Attorney Crandall's license to practice in Wisconsin for 30 days as discipline reciprocal to that imposed by the Supreme Court of Minnesota. *In re Disciplinary Proceedings Against Crandall,* 2008 WI 112, 314 Wis. 2d 33, 754 N.W.2d 501.

¶ 4. It is the "standard" counts that are the subject of this opinion. We referred those counts to a referee for further proceedings according to the standard procedures set forth in SCRs 22.15 and 22.16. Attorney James G. Curtis was appointed as referee.

¶ 5. Both parties filed dispositive motions. The referee denied Attorney Crandall's motion to dismiss the complaint against him. He granted the OLR's motion for summary judgment in part, concluding that the OLR was entitled to summary judgment on Counts 4 and 7 involving Attorney Crandall's failure to respond to the OLR's investigations, but also ruling that there were questions of material fact that precluded summary judgment with respect to Count 5, which involved certifications Attorney Crandall had signed regarding his client trust account.

¶ 6. The referee held an evidentiary hearing at which both sides were given an opportunity to present evidence. The OLR filed a post-hearing brief, but Attorney Crandall did not do so. The referee then issued his report and recommendation. He concluded that the OLR had met its burden of proving misconduct by clear, satisfactory, and convincing evidence with respect to Counts 1, 2, 4, 6, and 7, but had failed to meets its burden with respect to Counts 3 and 5. As noted above, the referee recommended a five-month license suspen-

sion and the assessment of the full costs of this disciplinary proceeding, which were $9,118.21 as of May 27, 2010.

¶ 7. The first issue we must address is the nature of our review. Attorney Crandall filed a timely notice of appeal from the referee's recommendation. He has not, however, filed a brief in this court, despite being granted multiple extensions of time to do so.

¶ 8. Attorney Crandall's opening appeal brief was initially due on July 6, 2010. He did not file a brief or file a motion for an extension of time by that date.

¶ 9. On August 9, 2010, Attorney Crandall filed a motion seeking an extension of time until September 24, 2010, to file his opening brief. The Chief Justice, on behalf of the court, issued an order granting him an extension of time until September 1, 2010, and stating that no further extensions of time would be granted. Attorney Crandall did not file a brief or a further extension motion by the extended due date.

¶ 10. On September 7, 2010, Attorney Crandall filed a second extension motion, again asking for an extension of time until September 24, 2010, to file his opening brief. Like his initial extension motion, his second motion alleged that he needed additional time due to the press of other business, especially given his status as a solo practitioner. He acknowledged that the court had granted only a part of the extension he had originally requested, but he asserted that he simply needed all the time identified in his initial motion in order to complete and file his brief.

¶ 11. The court, through the Chief Justice, granted this second extension motion, but the order explicitly stated that this was the "final extension" to be granted to Attorney Crandall. This second extension order further expressly informed Attorney Crandall

702

that the failure to file a brief by the new deadline could be grounds for the dismissal of his appeal:

> Respondent-appellant's opening brief shall be served and filed on or before September 24, 2010. This is the final briefing extension in this matter. No further extensions of time shall be granted. If respondent-appellant's opening brief is not served and filed by September 24, 2010, such repeated failure to comply with the court's orders may be considered by the court as grounds for (1) the dismissal of respondent-appellant's appeal and (2) consideration of the report and recommendation of the referee under SCR 22.17(2).

¶ 12. Despite the clear warning of the potential consequences of not filing a timely brief, Attorney Crandall has never filed a brief in this matter. His failure to file a brief raises the question of whether there should be a sanction, such as the dismissal of his appeal, for his disobedience of the court's orders.

¶ 13. Appeals in attorney disciplinary proceedings are governed by the rules of appellate procedure that apply to civil appeals to this court. SCR 22.17(3). Pursuant to Wis. Stat. § (Rule) 809.83(2), the failure of a person to comply with an appellate court's order or a requirement of the rules of appellate procedure "is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate." This court has construed this statute, however, not to authorize dismissal or summary reversal for all failures to comply with an appellate rule or order. Rather, noting that dismissal of an appeal with prejudice is a drastic sanction, we have held that "[f]or a court to dismiss an appeal under § (Rule) 809.83(2), there must be a showing that the party or the party's

attorney has demonstrated bad faith or egregious conduct, or there must be a common sense finding that the appeal has been abandoned." *State v. Smythe,* 225 Wis. 2d 456, 468–69, 592 N.W.2d 628 (1999); *see also Raz v. Brown,* 2003 WI 29, ¶ 18, 260 Wis. 2d 614, 660 N.W.2d 647 (applying *Smythe* standard to case where court of appeals summarily reversed portion of circuit court ruling because party failed to file a response brief to a cross-appeal).

¶ 14. We conclude that Attorney Crandall's conduct in this court warrants the dismissal of his appeal in this matter. He was given three separate deadlines to file his brief, and he ignored each of them. Although neither of his extension motions was filed prior to the expiration of the then-existing deadline, this court granted him extensions of time to file his brief. In both of those extension orders, Attorney Crandall was given a specific deadline and was told that no further extensions would be given. Indeed, in his second extension motion Attorney Crandall stated that he simply needed all of the time he had originally requested so that he could file his brief. Although he was ultimately granted the full extension that he sought, he never filed any brief, leading to the inference that the extension requests were mere ploys for delay. We conclude that his repeated disobedience of this court's briefing orders constitutes egregious conduct that warrants the dismissal of his appeal. Alternatively, his unexplained failure to file any brief after repeatedly asking for and being granted more time to do so constitutes an abandonment of his appeal.

¶ 15. Moreover, although the dismissal of an appeal is rightly considered a drastic remedy, we note that the impact of a dismissal in an attorney disciplinary proceeding is much less than in an ordinary civil appeal.

While a dismissal in an ordinary appeal terminates the case and leaves the judgment against the appellant intact, in attorney disciplinary cases this court still reviews the referee's report, although we do it as if no appeal had been timely filed under SCR 22.17(2). We still review the referee's report and recommendation because it is this court that ultimately determines whether an attorney has committed professional misconduct and, if so, what the appropriate discipline should be.

¶ 16. Indeed, we apply the same standard of review to the referee's report whether or not an appeal has been filed. Specifically, we affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 17. We now turn to the referee's findings of fact with respect to Attorney Crandall and the alleged misconduct at issue in this proceeding. Attorney Crandall was admitted to the practice of law in this state in September 1991. He currently maintains a law practice in New Richmond.

¶ 18. Attorney Crandall has been the subject of professional discipline on three previous occasions. In February 2006 this court suspended Attorney Crandall's license for three months as discipline reciprocal to that imposed by the Minnesota Supreme Court. *In re Disciplinary Proceedings Against Crandall*, 2006 WI 6, 287 Wis. 2d 102, 708 N.W.2d 690. His misconduct

involved neglect of client matters, failure to communicate with clients, failure to appear at court hearings, failure to comply with discovery rules, and failure to cooperate with the disciplinary investigation.

¶ 19. In March 2008 this court publicly reprimanded Attorney Crandall for knowingly advancing a claim or defense that was unwarranted under existing law, knowingly advancing a factual position without a basis to do so, failing to file a client's affidavit or a brief in opposition to a summary judgment motion, failing to keep his clients reasonably informed about the status of their matter, failing to return his clients' file in a timely manner, and failing to cooperate with the OLR's grievance investigation. *In re Disciplinary Proceedings Against Crandall,* 2008 WI 14, 307 Wis. 2d 536, 745 N.W.2d 679.

¶ 20. Finally, as noted above, Attorney Crandall's Wisconsin license was suspended for 30 days as reciprocal discipline. The misconduct that led to that discipline included failing to act with diligence and promptness, failing to communicate with his clients, engaging in conduct involving dishonesty or misrepresentation, and failing to cooperate with the Minnesota disciplinary authorities. *In re Disciplinary Proceedings Against Crandall,* 2008 WI 112, 314 Wis. 2d 33, 754 N.W.2d 501.

¶ 21. Counts 1 through 4 of the OLR's current complaint relate to Attorney Crandall's representation of client T.H. T.H. retained Attorney Crandall in August 2005 to defend him in a mortgage foreclosure action and to pursue potential counterclaims against the lender. The written fee agreement provided that T.H. would make an advance payment of $3,000 to Attorney Crandall, that Attorney Crandall's fee would be $300 per hour, and that Attorney Crandall would receive 25 percent of any recovery T.H. received from the lender.

706

¶ 22. Attorney Crandall placed the $3,000 advance payment he received from T.H. into his business account rather than his client trust account. The referee found that as of August 2005 Attorney Crandall was not aware of the requirement that advance payments be placed into a trust account. According to the referee, Attorney Crandall now understands his obligation to deposit advance payments into his client trust account and has changed his practices to comply with the applicable rules.

¶ 23. In November 2005 Attorney Crandall was able to obtain an order dismissing T.H. from the action, without prejudice, due to the insufficiency of service of process. On January 20, 2006, this court issued its decision suspending Attorney Crandall's license to practice law in Wisconsin effective February 20, 2006. 287 Wis. 2d at 105. On or about February 4, 2006, T.H. received his entire case file from Attorney Crandall along with a letter stating that Attorney Crandall's representation was concluded because T.H. had been dismissed as a party from the foreclosure action.

¶ 24. At the time he declared the representation terminated and returned the file to the client, Attorney Crandall had never provided an itemization of his fees or an explanation of the application of the $3,000 advance payment. In a subsequent telephone conversation that occurred within the next several days, Attorney Crandall agreed to return $2,000 of the advance payment. There was no specific agreement as to when that amount would be refunded to T.H., but Attorney Crandall stated that he would return those funds "as soon as [he] was able."

¶ 25. The suspension of Attorney Crandall's license caused his cash flow to decrease, and because he had not placed the advance payment into a trust account,

he therefore did not have $2,000 to pay T.H. until the fall of 2006. By July 27, 2006, T.H. had contacted the OLR and had submitted a letter inquiring about the failure of Attorney Crandall to repay the money.

¶ 26. On September 28, 2006, the OLR requested that Attorney Crandall submit a written response to T.H.'s grievance by October 23, 2006. On October 19, 2006, Attorney Crandall refunded the $2,000 to T.H.

¶ 27. Apparently because it had not received a response to the grievance, the OLR sent a second letter to Attorney Crandall on October 30, 2006, asking for a written response by November 9, 2006. On November 9 T.H. faxed a letter to the OLR that stated, "After further review and discussions with Mr. Eric L. Crandall I wish to withdraw my complaint." The same day Attorney Crandall faxed a letter to the OLR stating that he understood that T.H. had withdrawn his grievance, that he now considered the matter closed, and that he did not believe that any further submission to the OLR was necessary.

¶ 28. The OLR responded to both T.H. and Attorney Crandall by a letter dated November 13, 2006. In that letter, the OLR explained that it had a duty to investigate despite T.H.'s purported "withdrawal" of his grievance. The letter notified Attorney Crandall that his response to the OLR's request for information was overdue and stated that his response needed to be postmarked by November 24, 2006. When Attorney Crandall did not submit a written response, the OLR personally served another letter on him on December 8, 2006.

¶ 29. On December 12, 2006, Attorney Crandall faxed a letter to the OLR repeating that he considered the matter closed and that he did not believe that the OLR had standing to proceed with a disciplinary inves-

tigation. The OLR then filed a motion for an order to show cause why Attorney Crandall's license should not be temporarily suspended, which order was issued by this court on January 11, 2007. On February 12, 2007, Attorney Crandall finally faxed a response to the OLR, which then withdrew its temporary suspension motion.

¶ 30. When Attorney Crandall was subsequently interviewed by the District Committee, he refused to provide a copy of his fee agreement with T.H. or any other documents from his file. He later faxed a copy of the fee agreement to the OLR's investigator, but refused to submit any other non-public documents from the client's file on the ground that the client had directed him not to disclose attorney-client matters.

¶ 31. Based on these findings of fact, the referee concluded that Attorney Crandall had committed three counts of professional misconduct with respect to the T.H. representation and subsequent investigation. First, he concluded that Attorney Crandall's deposit of the $3,000 advance payment into his business account rather than his client trust account had violated former SCR 20:1.15(b)(4).[1] Second, the referee determined that Attorney Crandall had violated former SCR 20:1.16(d)[2]

---

[1] Former SCR 20:1.15(b)(4) applied to misconduct committed between July 1, 2004, and June 30, 2007. It provided: "Unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to SCR 20:1.15(g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

[2] Former SCR 20:1.16(d) applied to misconduct committed prior to July 1, 2007. It provided as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for

■■■■■■■■■■■■■■■■

by failing to refund the unearned fees of $2,000 for eight months after he had agreed to do so. Third, the referee found that Attorney Crandall had willfully failed to cooperate with the OLR's grievance investigation, in violation of SCRs 22.03(2) and (6),[3] and 20:8.4(f).[4]

¶ 32. The referee further concluded, however, that the OLR had failed to prove by clear, satisfactory, and convincing evidence that Attorney Crandall's refund of the $2,000 after the OLR had requested a written response to the T.H. grievance had constituted

employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[3] SCRs 22.03(2) and (6) state:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[4] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

710

a failure to cooperate with or an improper interference with an OLR investigation, in violation of SCRs 21.15(4),[5] 22.03(6), and 20:8.4(f).

¶ 33. Count 5 of the complaint alleged that Attorney Crandall had submitted false certifications for fiscal years 2005 through 2008[6] regarding having filed with the OLR a trust account overdraft notification agreement with the financial institution where his client trust account was maintained.

¶ 34. Some background is necessary to provide context for the referee's factual findings and conclusions of law on this topic. Effective January 1, 1999, this court created SCR 20:1.15(i) to require attorneys to maintain trust accounts in only financial institutions that had agreed to provide overdraft reports to the Board of Attorneys Professional Responsibility (BAPR) or later the OLR. S. Ct. Order 97–05, 218 Wis. 2d xiii (1998) (issued June 4, 1998; eff. Jan. 1, 1999). The court also created SCR 20:1.15(j), which set forth the requirements that a financial institution was required to follow for overdraft notifications. Supreme court rule 20:1.15 also continued to require each lawyer to certify on his/her annual bar dues statement that the lawyer had

---

[5] SCR 21.15(4) states:

> Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

[6] The fiscal year of the State Bar of Wisconsin begins on July 1 of the preceding year. Thus, for example, the 2005 fiscal year covered the period from July 1, 2004, through June 30, 2005.

711

complied with each of the record-keeping requirements set forth in the relevant subsection(s) of the rule.[7]

¶ 35. Effective July 1, 2004, SCR 20:1.15 was repealed and recreated. S. Ct. Order 02–06, 2004 WI 49, 269 Wis. 2d xiii (issued Apr. 30, 2004; eff. July 1, 2004). The requirement to maintain demand trust accounts only in financial institutions that agreed to notify the OLR of overdrafts was moved to subsection (h)(1). The certification requirement was moved to subsection (i). Just as the prior version of the rule required the lawyer to certify that he/she had complied with the record-keeping requirements in what was then subsection (e), the recreated rule required the lawyer to "explicitly certify on the state bar certificate described in sub. (i)(1) that the member has complied with each of the record-keeping requirements set forth in subs. (f) and (j)(5)." SCR 20:1.15(i)(2).[8] In addition, the recreated rule now provided that a lawyer's failure to file this certification was grounds for the automatic suspension of the lawyer's license, and the filing of a false certificate constituted unprofessional conduct and grounds for disciplinary action. SCR 20:1.15(i)(4).

¶ 36. The referee found that following the 1999 amendments, BAPR had taken the position that the rule required each member of the bar not only to have

---

[7] Prior to July 1, 2004, the record-keeping requirements were contained in subsection (e) of SCR 20:1.15. After July 1, 2004, those requirements were set forth in subsections (f) and (j)(5). Also, in addition to signing the certification, the lawyer was required to state the account number of any trust or fiduciary account and the name of the financial institution where the trust account was maintained.

[8] The lawyer was also still required to state the account number of the trust account and the name of the financial institution.

in place an overdraft agreement with the financial institution that administered the trust account, but also to file the overdraft agreement with BAPR. The OLR has followed that same position since its inception. The certification contained on the annual dues statement for fiscal years 2005 through 2008 followed this position and said that the lawyer was certifying that he/she had an overdraft agreement on file with the OLR.

¶ 37. The certification signed by Attorney Crandall on his annual bar dues statements for fiscal years 2005 and 2006 provided as follows:

> I hereby certify that I have trust and/or fiduciary accounts, have complied with each of the record-keeping requirements set forth in SCR 20:1.15(e) and have a trust account overdraft agreement on file with OLR for each demand-type "Client Account" and/or "Trust Account" into which I deposit client or third-party funds held in connection with a representation or in a fiduciary capacity that directly arises in the course of or as a result of a lawyer-client relationship.[9]

¶ 38. The certification that Attorney Crandall signed on his annual bar dues statements for fiscal years 2007 and 2008 was similar, but phrased slightly differently due to the repeal and recreation of SCR 20:1.15:

> I hereby certify that I have trust and/or fiduciary account(s) and that those accounts are identified above and/or attached to this certification in a separate list. I

---

[9] In his report, the referee quoted a slightly different version of the certification from an earlier year. The certifications quoted here are taken from the dues statements for fiscal years 2005 through 2008 that were admitted without objection as exhibits at the disciplinary hearing.

also certify that I have complied with each of the record-keeping requirements set forth in SCR 20:1.15(f) and/or (j)(5). I further certify that I have a trust account overdraft agreement on file with OLR for each demand-type trust account into which I deposit client funds or 3rd party funds, and that, with respect to each demand-type fiduciary account, I have an overdraft agreement on file with OLR or I am complying with the alternative protection procedures of SCR 20:1.15(j)(9)b. and/or (9)c.

¶ 39. The referee found that Attorney Crandall, who was also licensed in Minnesota, had maintained his client trust account at U.S. Bank in White Bear Lake, Minnesota. He opened the account in 1992. The referee found that at the time of the opening of the account Attorney Crandall had signed numerous forms. He also found that Attorney Crandall had relied on the bank to submit the necessary forms to the Minnesota and Wisconsin authorities.

¶ 40. Minnesota also has an overdraft reporting requirement. Minn. R. Prof. Conduct 1.15(k)-(l). The Minnesota rule requires that attorneys licensed in Minnesota may only maintain trust accounts in financial institutions that have been approved by the Minnesota Office of Lawyers Professional Responsibility (MOLPR) because those institutions have filed an agreement with the MOLPR that they will report overdrafts to the MOLPR. It appears from the referee's report that he concluded that U.S. Bank, where Attorney Crandall maintained his trust account, was an approved financial institution in Minnesota. The referee also appears to have credited Attorney Crandall's testimony that at some point there were one or two trust account checks issued when there were insuffi-

cient funds in the account, and U.S. Bank did indeed notify the lawyer regulatory authorities in both Minnesota and Wisconsin.

¶ 41. The referee found, however, that Attorney Crandall did not have a trust account overdraft agreement on file with the OLR prior to 2008. In 2007 the OLR asked Attorney Crandall to send it a copy of his overdraft notification agreement. Attorney Crandall responded that he had asked his bank for copies of the trust account documents that had been created when the account had been opened in 1992 and that he would forward those documents to the OLR when he had received them. The OLR nonetheless sent a blank form overdraft agreement to Attorney Crandall. On January 3, 2008, Attorney Crandall faxed such an overdraft agreement to the OLR, but it was incomplete and had not been signed by a representative of U.S. Bank. At some point shortly thereafter, Attorney Crandall opened a new trust account with the U.S. Bank branch office in Hudson, Wisconsin. On July 28, 2008, Attorney Crandall faxed to the OLR a completed overdraft notification agreement that had been signed by both Attorney Crandall and a U.S. Bank representative on July 18, 2008.

¶ 42. The referee concluded:

> There is insufficient evidence to the standard of clear, satisfactory and convincing evidence to conclude that [Attorney] Crandall violated former SCR 20:1.15(i)(4) when he certified on his annual State Bar dues statements for fiscal years 2005 through 2008 that he had a trust account overdraft agreement on file with the OLR for his client trust account, when he did not.

The referee believed that Attorney Crandall should not be found liable on this count because he concluded that

715

the applicable rules did not require a lawyer to certify that he/she had an overdraft agreement on file with the OLR, even though BAPR and the OLR had taken that position. The referee stated that the applicable rule during the relevant years had only required the attorney to have in place an overdraft agreement in which the financial institution agreed to notify the OLR of an overdraft. The rule did not require that such an agreement be filed with the OLR. The referee pointed to the fact that SCR 20:1.15(h)(8) was amended effective January 1, 2010, to specifically require that an overdraft notification agreement be filed with the OLR. S. Ct. Order 08–03, 2009 WI 62 (issued July 1, 2009; eff. Jan. 1, 2010). The addition of this requirement in 2010 led the referee to the conclusion that the filing of such an agreement with BAPR or the OLR was not mandated before 2010.

¶ 43. In addition, the referee noted that the portion of former SCR 20:1.15 that mandated the annual certification after the 2004 repeal and recreation, subsection (i)(1), required the attorney to certify that he/she had complied with each of the record-keeping requirements in subsections (f) and (j)(5). The overdraft notification agreement requirement, however, was not set forth in either subsection (f) or (j)(5); it was found in subsection (h).[10] Thus, the referee concluded that there was no obligation under the applicable rule to sign any certification regarding overdraft notification agreements.

---

[10] Similarly, prior to July 1, 2004, the applicable version of the rule required only that the attorney certify that he/she had complied with the record-keeping requirements of subsection (e). Subsection (e), however, did not contain the overdraft notification requirement. That requirement was set forth in subsection (i).

¶ 44. Although the referee acknowledged that the charge in the OLR's complaint was that the certification signed by Attorney Crandall was false and the certification indeed was not accurate regarding the filing of an overdraft agreement with the OLR, he concluded that Attorney Crandall should not be disciplined for falsely certifying something that he was not obligated to certify under the applicable rules and that should therefore not have been included in the certification. He further stated that even if one would find that Attorney Crandall's certifications had been false, this would have been "a highly technical and theoretical violation of the rules" for which "no disciplinary action is warranted."

¶ 45. The referee further specifically noted that Attorney Crandall was not charged with failing to have an overdraft notification agreement in place. Even if he had been, the referee stated that the evidence was unclear whether the trust account that Attorney Crandall maintained in Minnesota prior to 2008 complied with the applicable Wisconsin rules. Given the requirements of the Minnesota Rules of Professional Conduct, the account may also have been compliant with Wisconsin's overdraft notification requirements.

¶ 46. Counts 6 and 7 of the OLR's complaint relate to Attorney Crandall's representation of client D.P. in a breach of contract action. During the course of the representation, which began on September 3, 2003, D.P. paid a total of $4,000 to Attorney Crandall plus an additional $625 for mediation fees.

¶ 47. On November 19, 2004, Attorney Crandall sent a letter to D.P. enclosing some file documents and stating that the representation has been completed. As of that date, Attorney Crandall had never provided D.P.

717

with a billing statement or any itemization of the work Attorney Crandall had performed on D.P.'s behalf.

¶ 48. D.P. made several telephone calls and left messages requesting an itemization of Attorney Crandall's fees, but his calls were not returned. At some point, D.P. wrote an undated letter stating that he had asked for a detailed billing statement but had never received one and requesting that Attorney Crandall provide one within two weeks.

¶ 49. On June 5, 2006, which was after the date D.P. sent Attorney Crandall the undated letter, Attorney Crandall sent a letter to D.P. stating that D.P. had paid a total of $4,000 in fees to Attorney Crandall plus an additional $625 to the mediator. Attorney Crandall did not provide an itemization of his fees nor did he state that D.P. owed him additional fees.

¶ 50. D.P. filed a grievance with the OLR in July 2006. On August 7, 2006, the OLR sent a letter to Attorney Crandall notifying him of the grievance and requesting a written response.

¶ 51. On August 26, 2006, Attorney Crandall sent a letter to D.P. but he did not also send a copy to the OLR. The referee found that by that date Attorney Crandall had prepared an itemized billing statement, which was probably enclosed with the August 26, 2006, letter. The text of the letter stated for the first time that Attorney Crandall's total fees for representing D.P. were $8,045 and requested that D.P. pay the balance of $4,045 by September 11, 2006. The letter also contained the following statement:

> Finally, given these facts & documentation, I find your recently filed ethics complaint to be wholly without merit. I demand that you to [sic] withdraw it and any others you may have filed **immediately**, and I further

718

demand that you refrain from filing any other such merit less [sic] complaints with any other administrative or regulatory body. (Emphasis in original.)

¶ 52. On that same date Attorney Crandall also sent a separate letter to the OLR. That letter stated that Attorney Crandall was submitting a short response to D.P.'s grievance, "as I believe that [D.P.] will soon be withdrawing his inquiry/grievance."

¶ 53. D.P. forwarded the letter he received from Attorney Crandall to the OLR with the following comments:

Mr. Crandall is creating bills now.

First he calls me [and] tries to intimidate me so that I withdraw my complaint and now he all of a sudden after he closed his file out nearly two years ago he finds out that I owe him more [than] I paid.

¶ 54. On November 8, 2006, the OLR requested that Attorney Crandall provide his written response to the D.P. grievance by December 1, 2006. Attorney Crandall did not respond. After a subsequent letter from the OLR was personally served on Attorney Crandall, he finally submitted a written response. The response, however, provided only partial information and alleged that the Wisconsin regulatory authorities lacked jurisdiction because the work Attorney Crandall had performed for D.P. had occurred in Minnesota.

¶ 55. The OLR responded with a letter that contained four requests for additional information and gave Attorney Crandall a deadline of January 11, 2007, to respond. On February 14, 2007, Attorney Crandall submitted a letter that responded to only two of the four requests. The OLR then sent another letter asking for a response to the two other requests by February 23,

2007. When Attorney Crandall failed to respond, the OLR filed a motion for an order to show cause why a temporary suspension should not be imposed. On that same date, Attorney Crandall finally responded in full to the D.P. grievance, which led the OLR to withdraw its motion.

¶ 56. Based on these findings, the referee concluded that Attorney Crandall had failed to cooperate with a grievance investigation, in violation of SCRs 21.15(4), 22.03(6), and 20:8.4(f), by coupling a new and unsupported request for the payment of $4,045 in additional fees with a demand that D.P. immediately withdraw his grievance. In connection with this count, the referee specifically found not credible Attorney Crandall's testimony that D.P. had specifically asked him not to send an itemized billing because he was prone to stress and had medical issues. The referee also emphasized that Attorney Crandall had not mentioned that D.P. had owed any additional fees in his previous letter of June 2006, when he had first responded to D.P.'s request for an itemization with a letter that merely set forth the amounts that D.P. had paid.

¶ 57. On the final count of the complaint, the referee also concluded that Attorney Crandall's failure to provide a written response to the D.P. grievance and his failure to provide complete responses to the OLR's supplemental request for information, necessitating the filing of a motion for a temporary suspension, had violated SCRs 22.03(2) and (6).

¶ 58. With respect to the appropriate level of sanction, the referee was most troubled by Attorney Crandall's submission of a new $4,045 bill to D.P. in conjunction with a demand that D.P. withdraw his grievance. Given Attorney Crandall's erroneous belief

that the withdrawal of a grievance would terminate the investigation, the referee viewed the August 26, 2006, letter as "motivated by a purpose to interfere with the grievance investigation, and to strong-arm or coerce [D.P.] into withdrawing the grievance" and as "an obvious and serious interference with the [OLR's] investigation." The referee was also disturbed by Attorney Crandall's consistent failure to cooperate—both with the OLR's investigation and with the ensuing disciplinary proceeding.

¶ 59. The referee also indicated that the cases cited to him by the OLR could support a six-month suspension of Attorney Crandall's license to practice law in Wisconsin. He found the case of *In re Disciplinary Proceedings Against Arrieh,* 174 Wis. 2d 331, 496 N.W.2d 601 (1993) (imposing six-month suspension) to be the most analogous because Attorney Arrieh, like Attorney Crandall, had improperly attempted to pressure a client into withdrawing a grievance.

¶ 60. Despite the fact that he believed a six-month suspension could be a reasonable level of discipline here, the referee recommended that the court impose a five-month suspension in this proceeding. He acknowledged that this was a "close call," but felt that a six-month suspension would work too harsh of a result because it would require Attorney Crandall to complete the formal reinstatement process, which would lengthen the amount of time that Attorney Crandall would be prohibited from practicing law in Wisconsin. Moreover, the referee believed that the imposition of a suspension of six months or more and the accompanying formal reinstatement procedure have been reserved for situations where the misconduct has been particularly egregious or there was a need for the court to take a closer look at the attorney and assure itself that the

attorney has the necessary moral character to be granted the privilege of practicing law in this state. The referee did not believe that this case fell into either category. Although he stated that under the court's policy of progressive discipline the suspension should be longer than the three-month suspension previously imposed on Attorney Crandall, the referee did not believe that the suspension should extend to six months. He therefore recommended that the court impose a five-month suspension.

¶ 61. We turn first to the referee's findings of fact and conclusions of law. Since Attorney Crandall did not file a brief and since the OLR did not appeal from the referee's report, there are no challenges to any of the referee's findings of fact. We also do not find that any of the findings of fact are clearly erroneous, and we therefore adopt them.

¶ 62. We also agree with the referee's conclusions of law with respect to whether Attorney Crandall engaged in professional misconduct as alleged in the complaint. There is no question that Attorney Crandall improperly deposited an advance payment into a business account instead of a client trust account, that he unreasonably delayed the repayment of an unearned fee after the termination of a representation, and that he on multiple occasions failed to respond in a timely and complete manner to the OLR's inquiries during its investigations.

¶ 63. We further agree with the referee that Attorney Crandall's interactions with D.P. after the termination of the representation and after the OLR had notified Attorney Crandall of D.P.'s grievance constituted an improper interference with the OLR's investigation, in violation of SCRs 21.15(4), 22.03(6), and 20:8.4(f). Attorney Crandall never sent a bill or re-

quested the payment of additional funds when he terminated the representation in 2004 or when he sent D.P. a letter in 2006 in response to D.P.'s request for an itemization of the work performed. Only after Attorney Crandall learned that he was being investigated did he notify D.P. that D.P. owned him an additional $4,045, which was more than D.P. had previously paid him. Moreover, Attorney Crandall coupled that demand for the payment of a substantial sum of additional money with a demand that D.P. withdraw his grievance. Given Attorney Crandall's belief at the time that the withdrawal of a grievance would terminate an OLR investigation, it is clear that Attorney Crandall's August 26, 2006, letter was an improper attempt to interfere with the OLR's investigation.

¶ 64. As the referee concluded, there was not the same type of evidence linking Attorney Crandall's refund of money to T.H. with T.H.'s withdrawal of his grievance against Attorney Crandall. Although Attorney Crandall refunded $2,000 to T.H. only after he learned that T.H. had filed a grievance against him and T.H. then submitted a letter purporting to withdraw his grievance, there is no direct evidence that Attorney Crandall put pressure on or offered an incentive to T.H. in an attempt to persuade T.H. to withdraw the grievance. When T.H. was deposed, he repeatedly stated that he could not recall the substance of any conversations with Attorney Crandall regarding the refund of the unearned fee payment. Thus, there simply is not enough evidence here to meet the standard of clear, satisfactory, and convincing evidence of a violation. *See* SCR 22.16(5) ("The office of lawyer regulation has the burden of demonstrating by clear, satisfactory and convincing evidence that the respondent has engaged in misconduct.") Accordingly, we uphold the referee's de-

termination that the OLR did not meet its burden of proof with respect to Count 3.

¶ 65. With respect to the certification regarding having a trust account overdraft agreement on file with the OLR, we conclude that Attorney Crandall should not be disciplined on this count. The referee is correct that this court's rules did not require an attorney to certify that he/she had a trust account overdraft agreement on file with the OLR during the relevant years. The applicable versions of the rule required an attorney to list the name of the financial institution and the account number of the client trust account and to certify that the attorney had complied with the record-keeping requirements of either SCR 20:1.15(e) (prior to July 1, 2004) or SCR 20:1.15(f) and (j)(5) (after July 1, 2004). None of these subsections made any mention about a trust account overdraft notification agreement or the need to file such an agreement with the OLR. Thus, we conclude that it would not be appropriate to sanction an attorney for signing a technically inaccurate certificate when the inaccurate information was not required to be contained within the certificate.[11]

¶ 66. Turning to the question of the appropriate level of discipline, we conclude that a five-month suspension is proper in this case. Like the referee, we are most troubled by Attorney Crandall's letter to D.P. demanding payment of an additional $4,045 and the withdrawal of D.P.'s grievance. While the letter does not

[11] To avoid any misunderstanding about the rules currently in effect, we note that SCR 20:1.15(h)(8) now requires attorneys to file with the OLR "an overdraft notification agreement for each IOLTA account, each draft-type trust account and each draft-type fiduciary account that is not subject to an alternative protection under sub. (j)(9)."

explicitly state that Attorney Crandall would forego the $4,045 in fees in exchange for the withdrawal of the grievance, given the fact that Attorney Crandall had never before alleged that D.P. owed him additional money, it is clear that the claim for an additional $4,045 in fees was retaliation for D.P.'s grievance and an incentive for D.P. to withdraw that grievance. Although the investigation would have continued even if D.P. had "withdrawn" the grievance, the letter is a serious violation of Attorney Crandall's obligation to cooperate with the OLR's investigation.[12]

¶ 67. Although we agree with the referee that the situation in *Arrieh* is the most analogous to the present case because both involved attempts by attorneys to convince clients to withdraw grievances, we conclude that the *Arrieh* decision and its six-month suspension are partially distinguishable. In that case, Attorney Arrieh was found to have committed additional misconduct that is more serious than the other misconduct committed by Attorney Crandall. Most importantly, Attorney Arrieh twice made a false statement to BAPR that the client had agreed to withdraw the client's grievance, when the client had never agreed. In addition, Attorney Arrieh failed to notify his client for years that Attorney Arrieh had received over $1,500 from the client's insurance company in settlement of a claim,

---

[12] Once the OLR comes into possession of information that suggests that an attorney may have committed professional misconduct, it has an obligation to investigate the matter, regardless of the grievant's subsequent desires. *See* SCR 21.12 (OLR does not represent the complaining person, but rather the interests of the supreme court and the public in the integrity of the lawyer regulation system). Thus, a grievant may not "withdraw" his/her grievance in the sense of terminating an investigation.

that he had cashed the insurance company's check, and that, after deducting his fees and other expenses, he had allegedly applied the proceeds to the upkeep of the client's real property. Attorney Arrieh also failed on multiple occasions to provide accountings to the client regarding Attorney Arrieh's fees and his handling of the client's money and property.

¶ 68. Moreover, in addition to the more serious nature of Attorney Arrieh's misconduct, we also note that at the time that we imposed the six-month suspension on Attorney Arrieh, he was already serving a one-year suspension. Thus, although Attorney Crandall has been the subject of professional discipline on several previous occasions, Attorney Arrieh's disciplinary history involved a much stronger sanction than has previously been imposed on Attorney Crandall.

¶ 69. It is important to note that none of the five counts of misconduct found in this matter involves Attorney Crandall's deficient representation of any client. In addition, there is no finding that either of the two clients involved in this matter suffered financial harm because of Attorney Crandall's conduct and that he should be required to pay restitution. The OLR also did not charge Attorney Crandall with dishonest conduct, even with respect to the additional $4,045 in fees that Attorney Crandall belatedly sought to collect from D.P. Finally, although Attorney Crandall's failure to provide timely and adequate responses to the OLR's inquiries is a significant violation of the rules that cannot be condoned, we do note that Attorney Crandall did ultimately provide responses that allowed the OLR to continue its investigations.

¶ 70. We wish to point out that our decision on discipline is not determined by the fact that a six-month suspension would necessarily entail a longer period of

suspension while Attorney Crandall would go through the formal reinstatement procedure. "When the facts have warranted a six-month suspension, we have imposed that discipline, regardless of the accompanying need for a formal reinstatement proceeding." *In re Disciplinary Proceedings Against Lister,* 2007 WI 55, ¶ 77, 300 Wis. 2d 326, 731 N.W.2d 254. We merely conclude that a six-month suspension and a formal reinstatement proceeding are not appropriate for the misconduct found in this matter and are not necessary to accomplish the goals of lawyer discipline in this case.

¶ 71. A five-month suspension is a significant sanction for Attorney Crandall to suffer for his serious professional misconduct. It comports with our policy of imposing progressively harsher sanctions when an attorney continues to engage in similar misconduct. Moreover, it should be abundantly clear to Attorney Crandall that his conduct has not been acceptable and that any further misconduct could result in the loss of his license to practice in this state for an extended period of time and the possibility that he will have to prove his fitness to regain the privilege of practicing law in a formal reinstatement proceeding. His efforts should be directed toward understanding and complying with his ethical obligations rather than attempting to minimize the consequences after he fails to comply.

¶ 72. Finally, we determine that Attorney Crandall should be required to pay the full costs of this disciplinary proceeding. We note that Attorney Crandall did not object to the statement of costs filed by the OLR. We find no reason to deviate from our general practice of imposing the full costs of a disciplinary proceeding on the attorney whose conduct necessitated the proceeding.

¶ 73. IT IS ORDERED that the license of Eric L. Crandall to practice law in Wisconsin is suspended for a period of five months, effective May 31, 2011.

¶ 74. IT IS FURTHER ORDERED that within 60 days of the date of this order, Eric L. Crandall shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Eric L. Crandall to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 75. IT IS FURTHER ORDERED that Eric L. Crandall shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 76. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting in part*). This is the fourth disciplinary proceeding against Attorney Crandall and the third time that his license to practice law in Wisconsin has been suspended. Consistent with this court's policy of imposing progressive discipline against repeat violators of the Rules of Professional Conduct, *see, e.g., In re Disciplinary Proceedings Against Nussberger,* 2006 WI 111, ¶ 27, 296 Wis. 2d 47, 719 N.W.2d 501, I would suspend Attorney Crandall's license for a period of six months, as the Office of Lawyer Regulation requested. A six-month suspension would require Attorney Crandall to comply with the formal reinstatement procedure set forth in SCRs 22.29–22.33 and to demonstrate, among other things, that he has a proper understanding and appreciation of the ethical standards that are required of Wisconsin lawyers and will act in conformity with those standards. Because the majority opinion does not impose a sufficient suspension to require a formal

reinstatement proceeding, I respectfully dissent in part as to the appropriate level of discipline.

¶ 77. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.